UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GEMCAP LENDING I, LLC,** | Case No.: 18-CV-05979-YGR |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANT ROBERT HOWER'S SPECIAL MOTION TO STRIKE** |
| v. | |
| **UNITY BANK MINNESOTA, ROBERT HOWER, GEORGE VAN BUREN,** | |
| Defendants. | |

Plaintiff GemCap Lending I, LLC filed this action on September 28, 2018, against Defendants Unity Bank Minnesota, Robert Hower, and George Van Buren (collectively, "Defendants"). In its complaint, plaintiff alleges claims for breach of fiduciary duty as to defendant Van Buren, fraud as to defendants Hower and Unity Bank, and aiding and abetting to commit fraud as to all Defendants.[1] Relevant here, defendant Hower thereafter filed a Special Motion to Strike, seeking an order striking (1) paragraphs 41 through 44 of the complaint, (2) plaintiff's second claim for "fraud," and (3) all references to defendant Hower in support of plaintiff's third claim for "aiding and abetting to commit fraud." (Dkt. No. 42.) Defendant Hower brings this motion pursuant to California Code of Civil Procedure section 425.16 and *Baral v. Schnitt*, 1 Cal. 5th 376 (2016), which permit a court to strike portions of a complaint arising from acts undertaken in furtherance of the Constitutional right of petition or free speech. Cal. Code Civ. Proc. § 425.16(b)(1).

---

[1] On November 14, 2018, defendant Unity Bank filed an answer on behalf of itself. (Dkt. No. 11.) Defendant Van Buren filed a motion to dismiss for lack of jurisdiction on December 7, 2018 (Dkt. No. 20), which the Court granted on February 6, 2019 (Dkt. No. 30).

Having carefully considered the papers submitted, the pleadings in this action, and the arguments of the parties at the hearing held on April 23, 2019, and for the reasons set forth below, the Special Motion to Strike is **GRANTED IN PART**.

**I. BACKGROUND**

The following background is taken from plaintiff's complaint:

Plaintiff GemCap Lending I, LLC is a lender that provides financing for small to mid-sized businesses that pledge assets, such as inventory, equipment and accounts receivable, as security in exchange for a loan facility. (Dkt. No. 1 ("Compl."), ¶ 9.) On September 26, 2011, plaintiff entered into a Loan and Security Agreement (the "LSA") with officers and guarantors of Mountain Thunder Coffee Plantation International, Inc. and Naturescape Holding Group International, Inc. (the "Borrowers"). (*Id*. ¶ 10.) Under the terms of the agreement, the Borrowers agreed to pledge equipment and other property as secured collateral in exchange for receiving financing from plaintiff. (*Id*. ¶ 11.) The Borrowers subsequently defaulted on their loan obligations. (*Id*. ¶ 19.) In December 2015, plaintiff filed an action in Hawaii state court, petitioning for the appointment of a receiver to operate the Borrowers' businesses and preserve plaintiff's collateral. (*Id*. ¶ 22.) The court appointed defendant George Van Buren as receiver. (*Id*.)

Due, in part, to defendant Van Buren's failure to supervise and manage the Borrowers' businesses, the Borrowers proceeded to misappropriate the collateral and equipment securing the LSA. (*Id*. ¶¶ 29, 37.) On September 15, 2016, various creditors, including plaintiff, initiated involuntary bankruptcy proceedings as to the Borrowers. (*Id*. ¶ 39.) In the following months, the Borrowers made numerous representations to the Hawaii court that they were in active negotiations with a financial institution for a new loan that would enable them to pay plaintiff the full amount owed under the LSA. (*Id*. ¶ 40.) Plaintiff alleges, on information and belief, that these representations were intended to delay plaintiff's attempt to sell the secured collateral and afford the Borrowers time to transfer the assets fraudulently. (*Id*.)

Thereafter, the Borrowers conspired with defendants Robert Hower and Unity Bank Minnesota in its efforts to deprive plaintiff of recovery on the amounts due under the LSA. (*Id*. ¶ 56.) At some point, the Borrowers began engaging in discussions with defendants Hower and

Unity Bank regarding a potential loan to fulfill the Borrowers' obligations to plaintiff. (*Id.* ¶ 41.) After the Hawaii court became aware of the potential loan, it ordered defendant Unity Bank to prepare written updates on the status of the same. (*Id.*) Defendant Unity Bank provided these written updates to defendant Hower and the Borrowers with the understanding that they would be presented to the court, and with an intent to mislead the court and delay plaintiff's recovery efforts. (*Id.* ¶¶ 41, 43.) Specifically, plaintiff alleges that at a Hawaii court proceeding on September 12, 2016, defendant Hower falsely represented that he was the president of defendant Unity Bank and gave the court a verbal update on the potential loan. (*Id.* ¶ 42.) Defendant Hower falsely reported to the court that the loan with defendant Unity Bank was proceeding, even though defendant Unity Bank had already informed the Borrowers that it was unlikely to proceed with a loan. (*Id.*) As a direct result of these representations, the Hawaii court continued hearings in the case, delaying foreclosure on the collateral and giving the Borrowers time to convert the assets. (*Id.* ¶¶ 43-44.)[2]

Notably, the complaint contains two allegations of conduct outside of court proceedings that relate to defendant Hower. First, plaintiff alleges that defendant Unity Bank advertised defendant Hower on a website as a representative of defendant Unity Bank. (*Id.* ¶ 41.) Second, plaintiff alleges that defendant Hower communicated with an employee of Unity Bank that he anticipated funding a loan of $3,500,000 to $4,000,000, concluding that the Hawaii court might force plaintiff to accept a loss at a future date because this was less than the full amount needed for the Borrowers to fulfill their obligations to plaintiff. (*Id.*)[3]

---

[2] Defendant Hower is referenced for the first time in paragraph 41 of the complaint, which contains the bulk of the factual allegations related to him. The Court notes that the complaint does not explain, among other things, how defendant Hower became involved in a potential loan deal with the Borrowers, how or whether defendant Hower communicated either with the Borrowers to carry out the alleged conspiracy or with plaintiff regarding the loan, or how or whether defendant Hower stood to benefit from the alleged conspiracy.

[3] At the hearing on this motion, plaintiff's counsel proffered additional evidence not included in the complaint indicating that defendant Hower falsely represented to plaintiff that he had authority to execute a loan for the Borrowers and that he could fund the full amount needed to fulfill the Borrowers' obligations to plaintiff. According to plaintiff's counsel's proffer, these representations induced plaintiff to delay foreclosure on the assets.

3

## II. DISCUSSION

### A. Legal Framework

Defendant brings this motion seeking to strike portions of the complaint pursuant to section 425.16 of the California Code of Civil Procedure. California enacted section 425.16 to curtail "strategic lawsuits against public participation," known as "SLAPP" actions, finding "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." Cal. Civ. Proc. Code § 425.16(a). A defendant in federal court may bring an anti-SLAPP motion with respect to California state law claims asserted under diversity or supplemental jurisdiction. *Jen v. City & Cty. of San Francisco*, No. 15-CV-03834-HSG, 2016 WL 3669985, at *11 (N.D. Cal. July 11, 2016).

This Court, sitting in diversity, follows the California courts' two-step process for analyzing a special motion to strike a SLAPP suit. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). First, the moving party must make "a threshold showing . . . that the act or acts of which the plaintiff complains were taken 'in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v. Consumer Cause, Inc.,* 29 Cal. 4th 53, 67 (2002) (quoting Cal. Code Civ. Proc. § 425.16(b)(1)). The moving party meets this burden by showing that the act underlying the relevant causes of action fits one of the categories spelled out in section 425.16(e). *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002) (quoting *Braun v. Chronicle Publishing Co.*, 52 Cal. App. 4th 1036, 1043 (1997)). If the moving party makes such a showing, the burden shifts to the complainant to establish a probability of prevailing on the merits. *Navellier,* 29 Cal. 4th at 88-89. If the plaintiff fails to meet its burden at the second step, the claim based on the protected activity is stricken and "[a]llegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016) (holding that a court may strike only portions of a cause of action that are based on protected activity while leaving other parts intact).

**B. Analysis**

The Court considers each prong of the anti-SLAPP motion test.

*1. First Prong: Protected Activity*

The Court first looks to whether defendant has established that plaintiff's claims arise from protected activities. An act constitutes protected activity under section 425.16 if it is undertaken "in furtherance of [a] person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code 425.16(b)(1). Section 425.16(e) sets forth specific categories of protected activities. Among these categories are "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," as well as "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. Proc. Code §§ 425.16(e)(1)-(2). A statement is made "in connection with" litigation under section 425.16(e)(2) if it "relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." *Neville v. Chudacoff,* 160 Cal. App. 4th 1255, 1266 (2008).

Plaintiff's claims against defendant Hower arise out of conduct that falls into two categories. The Court reviews each. First, and primarily, plaintiff alleges that its harm results from statements defendant Hower made in the Hawaii court proceeding, namely, that "he was the president of Unity Bank and that Unity Bank was actively in the process of evaluating a potential commercial loan for the Borrowers[.]" (Compl. ¶ 50.) Plaintiff does not and cannot dispute that defendant Hower's statements, made on the record during a hearing, and which were directed at the court, constitute a statement made "before a . . . judicial proceeding." Further, defendant Hower's statements constitute protected activity under section 425.16(e) even though they are alleged to be false. *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 184 Cal. App. 4th 1539, 1549 (2010) ("whether or not [appellant's] statements were false does not determine whether they constitute protected activity for purposes of the SLAPP statute").[4] Defendant Hower's

---

[4] Plaintiff asserts that both the United States Supreme Court and the California Supreme Court have recognized that "acts of extrinsic fraud do not fall within protected activity in a court proceeding," citing *Briscoe v. LaHue*, 460 U.S. 325, 333 (1983); *Silberg v. Anderson*, 50 Cal.3d.

representations thus fall within the category of protected activity set forth in section 425.16(e)(1). *See Mello v. Great Seneca Fin. Corp.*, 526 F. Supp. 2d 1024, 1029 (C.D. Cal. 2007) ("[U]nder the statute's express language, statements and writings made during judicial proceedings are protected by the anti-SLAPP statute, including a complaint filed in a judicial proceeding.")[5]

Moreover, defendant Hower's statements to the Hawaii court also fall under the category of protected activity set forth in section 425.16(e)(2), because they were made "in connection with an issue under consideration" by the Hawaii court. In order for section 425.16(e)(2) to apply, the moving party need only show that that the relevant statements bear a relationship to the substantive issues before the court. *Neville,* 160 Cal. App. 4th at 1266. Plaintiff alleges that the Hawaii court had previously ordered defendant Unity Bank to provide updates on the status of the loan and to inform the court if defendant Unity Bank concluded it could not make a full or partial loan to plaintiff. (Compl. ¶ 41.) Plaintiff further alleges that defendant Unity Bank provided these updates to the Borrowers and defendant Hower "with the express understanding that these updates would be presented to the court." (*Id.*) According to plaintiff, "*[a]s a direct consequence and in reliance upon* the false representations of defendants Hower and Unity Bank *to the court*, GemCap was unable to proceed with recovery of the collateral and equipment." (*Id.* ¶ 53, emphasis supplied.) Plaintiff's own allegations demonstrate that defendant Hower's representations to the court were relevant to the issues in the Hawaii court litigation—if they were not, the court presumably would not have asked for updates from defendant Unity Bank or altered the schedule in the litigation

---

205, 214 (1990). (Opposition, 3.) The Court disagrees. *Briscoe* does not even mention "extrinsic fraud" or "protected activities," much less address the application of these principles in an anti-SLAPP context. Moreover, *Silberg* recognizes an "extrinsic fraud" exception to the "litigation privilege," not the protected activity analysis under section 425.16. Insofar as plaintiff contends that the extrinsic fraud creates an exception to application of the litigation privilege, that argument is addressed in full below.

[5] The Court takes note of the fact that defendant Hower was not sworn in when he addressed the Hawaii court at the September 12, 2016 hearing. (Dkt. No. 43 ("Hower Decl."), ¶ 7.) Nothing in the plain language of section 425.16(e)(1) indicates that a person must be sworn in before his statements are considered a protected activity, and the Court is not aware of any cases holding as such. However, even if this was the case, defendant Hower's statements would still be protected under section 425.16(e)(2) because they were made "in connection with" the litigation pending in the Hawaii court, as discussed herein.

6

based on one such update.

Plaintiff argues that the challenged conduct does not fall within the definition of a protected activity because it does not involve a "public issue," which plaintiff contends is required to invoke the protections of section 425.16. (Dkt. No. 49 ("Opposition"), 5.) Plaintiff misapprehends the rule. Section 425.16(b)(1) provides that a cause of action arising "from any act of [a] person in furtherance of the person's right of free petition of free speech under the United States Constitution or the California Constitution in connection with a public issue" may be subject to an anti-SLAPP motion. In *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106 (1999), the California Supreme Court analyzed this provision to determine whether section 425.16 always imposes a "public issue" requirement. The *Briggs* court held that it does not, finding that section 425.16 "broadly encompasses participation in official proceedings, generally, ***whether or not such participation remains strictly focused on 'public' issues***." *Briggs*, 19 Cal. 4th at 1118 (emphasis supplied); *see also Commonwealth Energy Corp. v. Inv'r Data Exch., Inc.*, 110 Cal. App. 4th 26, 32 (2003) ("[T]he rule is [] that if the speech was made or the activity was conducted in an official proceeding authorized by law, there is no need that it be connected to a public issue."). Thus, the "public issue" requirement applies only where the relevant conduct is unrelated to issues before a court in related proceedings, but rather, implicates only free speech rights. *Briggs*, 19 Cal. 4th at 1114 (differentiating section 425.16(e)(1) and (2), which "concern[] statements made in connection with issues under review by official proceedings" from section 425.16(e)(3) and (4), which "concern[] statements made in public fora and 'other conduct' implicating speech or petition rights"). Because Plaintiff's claims against defendant Hower are premised on his alleged representations at the Hawaii court proceeding, which implicates sections 425.16(e)(1) and (2), the Court need not consider whether the challenged activities concern a matter of "public interest."

Next, with respect to defendant Hower's conduct outside of the Hawaii court proceeding, namely the website advertisement of defendant Hower as one of the bank's representatives and the Defendants' communications on funding, the Court finds these allegations do not relate to protected activities. The out-of-court conduct was not made before any "official proceeding authorized by law," and thus, section 425.16(e)(1) does not apply. Nor was the conduct made "in connection

with" an issue under consideration by a judicial body. In particular, although the complaint intertwines these allegations with others regarding defendant Hower's conduct during court proceedings, the complaint does not articulate a direct relationship between the two categories of allegations. Moreover, even if defendant Hower's out-of-court conduct was sufficiently related to the issues before the Hawaii court, the conduct was not "directed to persons having [] interest in the litigation," which involved only plaintiff and the Borrowers. *See Neville,* 160 Cal. App. 4th at 1266. Thus, section 425.16(e)(2) does not apply.[6]

Accordingly, the Court finds that defendant Hower has not met its burden of demonstrating that defendant Hower's out-of-court statements constitute a protected activity, and thus, these allegations are not entitled to anti-SLAPP protection. *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016) ("[W]hen relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at th[e] [protected activity] stage."). However, defendant Hower has met his burden of demonstrating that his statements before the Hawaii court were protected. Thus, the Court proceeds to analyze this conduct under the second prong of the test.

### B. Second Prong: Probability of Prevailing

Turning to the second prong, the burden shifts, and plaintiff must put forward evidence to show that it is likely to prevail on its claims against defendant Hower, namely fraud and aiding and abetting. The California Supreme Court has described the second step of the analysis as a "summary-judgment-like procedure." *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016) (quoting *Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007)). To establish a probability of prevailing on its claims, a plaintiff must state a legally sufficient claim and must support that claim with a sufficient *prima*

---

[6] The fact that plaintiff alleges conduct that occurred outside of the court proceeding does not save plaintiff's claims insofar as they are based on the allegations of protected activity. A plaintiff "cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and unprotected activity under the label of one 'cause of action.'" *Fox Searchlight Pictures, Inc. v. Paladino,* 89 Cal. App. 4th 294, 308 (2001). Thus, plaintiff's additional allegations do not alter the crux of plaintiff's claims against defendant Hower, which concern his representations before the Hawaii court. *See Semiconductor Equip. & Materials Int'l, Inc. v. The Peer Grp., Inc.*, No. 15-CV-00866-YGR, 2015 WL 5535806, at *5 (N.D. Cal. Sept. 18, 2015) ("The [anti-SLAPP] statute focuses not on the form of the claim, but the underlying nature of the activity giving rise to the asserted liability.") (citing *Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1232 (2003)).

8

*facie* evidentiary showing to sustain a favorable judgment, assuming that evidence is credited. *Id.* at 384-85. The *prima facie* showing must be made with evidence that is admissible at trial. *Contreras v. Dowling*, 5 Cal. App. 5th 394, 405 (2016) (internal citations omitted). The Court must consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based," Cal. Code Civ. Proc. § 425.16 (b)(2), but "[u]nverified allegations in the pleadings or averments made on information and belief cannot make the showing," *Contreras*, 5 Cal. App. 5th at 405 (internal citations omitted).

The standard applied to an anti-SLAPP motion presents a higher burden than the plausibility standard applied for a motion to dismiss. If plaintiffs cannot plead a plausible cause of action under the FRCP 12(b)(6) standard, then plaintiffs as a matter of law cannot meet the probability of success on the merits standard. *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010) (finding that a defendant who was unsuccessful on a motion to dismiss could still prevail on the anti-SLAPP motion to strike because the plaintiff may state "a legal claim" but may not have "facts to support it"). If the plaintiff cannot demonstrate a probability of prevailing on the merits, "the claim and its corresponding allegations must be stricken." *Baral*, 1 Cal. 5th at 395.

The Court finds that plaintiff fails to meet its burden on the second prong. As an initial matter, the Court considers whether plaintiff has submitted sufficient evidence to establish a likelihood of prevailing against defendant Hower.[7] To state a claim for fraud under California law, a plaintiff must allege "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003).

---

[7] Plaintiff points to the complaint as evidence to support a probability of prevailing on the merits. However, courts have consistently held that a plaintiff "cannot simply rely on the allegations in the complaint" to meet its burden on the second prong. *ComputerXpress v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001) (quoting *Paul for Council v. Hanyecz*, 85 Cal. App. 4th 1356, n.5 (2001)). Rather, the plaintiff "must provide the court with sufficient *evidence* to permit the court to determine whether there is a probability that the plaintiff will prevail on the claim. *Id.* (emphasis in original) (citation omitted); *Roberts v. Los Angeles County Bar Assn.*, 105 Cal. App. 4th 604, 613-614 (2003) ("In assessing the probability of prevailing, a court looks to the evidence that would be presented at trial, similar to reviewing a motion for summary judgment; a plaintiff cannot simply rely on its pleadings, even if verified, but must adduce competent, admissible evidence.").

9

To state a claim for aiding and abetting, a plaintiff must allege knowledge that another's conduct constitutes a fraud and substantial assistance or encouragement of the act. *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93 (2007) (quoting *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996)).

In support of its claims, plaintiff offers the following evidence: a declaration from plaintiff's counsel regarding the Hawaii court proceeding; an excerpt of the transcript from the Hawaii court proceeding; defendant Hower's declaration in support of the motion to strike; and the allegations in the complaint. Even if this evidence was persuasive on the question of whether there is a probability of plaintiff prevailing on the merits of its claims,[8] plaintiff nevertheless fails on the second prong because its claims are barred by the litigation privilege.

California Civil Code, section 47 provides absolute immunity from claims based upon

---

[8] As to the declaration from plaintiff's counsel, defendant argues that the declaration contains inadmissible legal conclusions, as well as purported facts about the Hawaii court proceeding without any explanation of whether or how counsel has personal knowledge of such facts. (Dkt. No. 50, 11-13.) Although the Court credits counsel's sworn statement that he has personal knowledge of the *facts* contained in the declaration, many other statements are purely legal arguments, including those regarding the purpose of the status report, defendant Hower's intent, whether defendant Hower had any "influence or control" over the placement of a loan with defendant Unity Bank, and whether there was an "extrinsic fraud." At most, the declaration supports a finding that defendant Hower represented himself as the president of defendant Unity Bank when providing an update on the status of the loan. (Dkt. No. 49-1, ¶ 2.) The Court did consider the transcript from the Hawaii court proceedings, which reflects the Hawaii court's statement, during the receivership proceeding, that he "s[aw] the bank's president." (Dkt. No. 58, 12:5-6.) Defendant Hower proceeded to come forward, and state and spell his name on the record. (*Id.*, 12:8-16.) The judge stated that he would "entertain" any "good news" in the form of a "representation" that the loan was approved. (*Id.* 12:25-13:6.) The court was informed that there had not been final approval of the loan. (*Id.* 13:10-13.) Defendant Hower then read out loud what was purported to be an email from Unity Bank's Chief Credit Officer. (*Id.* 15:1-16:9.) Following defendant Hower's status update, the court asked defendant Hower several questions regarding the documentation that would be required to finalize the loan and when the loan might be funded. (*Id.* 18:20-19:4; 20:1-22:5.) Defendant Hower stated that he was "looking forward to . . . closing this loan in November, by the 14th, which the court acknowledged as the "specific date that [defendant Hower] wish[ed] to have . . . [a] commitment" to the court regarding the loan. (*Id.* 25:15-25.) Thus, the transcript indicates that defendant Hower represented himself to the Hawaii court as the president of defendant Unity Bank, gave the court a status update, and made additional affirmative commitments to the court regarding funding of the loan. Further, defendant Hower's declaration establishes that he is a loan broker, not an employee of defendant Unity Bank. (Hower Decl., ¶¶ 3, 7.)

10

communications made as part of a judicial proceeding. Cal. Civ. Code § 47(b). For the litigation privilege to apply, the communication must have been "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Jacob B. v. Cty. of Shasta*, 40 Cal. 4th 948, 955 (2007) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990)).[9] "The principal purpose of the litigation privilege is to afford litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative claims." *Wentland v. Wass,* 126 Cal. App. 4th 1484, 1492 (2005) (internal marks and quotations omitted). The litigation privilege has been interpreted broadly by the California courts, and it applies to any communication made in connection with judicial proceedings. *Feldman v. 1100 Park Lane Associates,* 160 Cal. App. 4th 1467, 1485 (2008); *see also Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1266 (2008) (holding that to be privileged under section 47, a statement must be "reasonably relevant" to pending or contemplated litigation).

The Court finds defendant Hower's statements before the Hawaii court, allegedly made at the request of the court and in connection with pending litigation, fall within the scope of the litigation privilege. Plaintiff's contention that the litigation privilege does not apply because defendant Hower's representations was not made to "achieve the objects of the litigation" is unavailing. Plaintiff itself alleges in the complaint that the Hawaii court expected an update on the potential loan to the Borrowers "in order to determine whether or not to allow GemCap to proceed with a sale of assets," and that based on defendant Hower's statement, the Hawaii court continued the case. (Compl. ¶¶ 41, 43.) In any event, given the broad scope of the litigation privilege, defendant Hower's statements to the court were clearly at least "reasonably relevant" to the proceedings. The litigation privilege therefore applies.

---

[9] Courts have recognized that the standard for determining whether a communication was made in connection with litigation is similar as between section 47 and the anti-SLAPP statute. *See Flatley v. Mauro*, 39 Cal. 4th 299, 322-24 (2006) (noting relationship between litigation privilege and anti-SLAPP statute, but holding that they are different in substance and purpose).

11

Plaintiff's argument that an "extrinsic fraud" exception applies does not persuade.[10] Plaintiff contends that because defendant Hower's statements to the Hawaii court were false, they constitute an "extrinsic fraud." (Opposition, 3.) Plaintiff asserts that such "extrinsic fraud" is not subject to the protections of the "litigation privilege," and thus, plaintiff's claims against defendant Hower are not barred as a matter of law. As plaintiff correctly points out, courts have recognized an exception to the litigation privilege for extrinsic fraud. *Silberg*, 50 Cal. 3d. at 214. "Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. . . . The essence of extrinsic fraud is one party's preventing the other from having his day in court." *Navarro v. IHOP Properties, Inc.*, 134 Cal. App. 4th 834, 844 (2005) (quoting *City and County of San Francisco v. Cartagena*, 35 Cal. App. 4th 1061, 1067 (1995)). Where, however, a party "has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary," any alleged fraud is intrinsic and will not support an exemption from the litigation privilege. *Id*.

Plaintiff does not claim that it lacked notice of the Hawaii court proceeding, to which it was a party, nor does it offer any other explanation as to how it was not afforded an adequate opportunity to challenge the veracity of defendant Hower's statements before the Hawaii court. Further, even assuming defendant Hower's statements to the Hawaii court were false or misleading, the Court is doubtful that such wrongdoing would overcome the broad protections of the litigation privilege. *See Flatley,* 39 Cal. 4th at 324 (litigation privilege applies to some forms of unlawful litigation-related activity since the purposes of the privilege outweigh the "occasional unfair result" in an individual case); *Doctors' Co. Ins. Servs. v. Superior Court,* 225 Cal. App. 3d 1284, 1284-85

---

[10] In its opposition, plaintiff appears to conflate the concepts of "litigation privilege" and "protected activities." Specifically, plaintiff argues that the motion should be denied because, among other reasons, defendant Hower's appearance before the Hawaii court constitutes an "extrinsic fraud." (Opposition, 2-3.) Plaintiff then contends, in a single paragraph in the opposition, that the "extrinsic fraud" allegations "cannot be vested with litigation privilege" and "do not fall within protected activity." (*Id*.) The concepts of "litigation privilege" and "protected activity" are distinct, however. Because "extrinsic fraud" is an exception to the litigation privilege, the Court addresses the issue here, in its analysis of the second prong.

12

1 (1990) (litigation privilege applies to claim for subornation of perjury in context of defense of action). The Court finds that the "extrinsic fraud" exception to the litigation privilege does not apply to defendant Hower's alleged misrepresentations to the Hawaii court. The litigation privilege applies, and Plaintiff's claims against defendant Hower in this Court, based upon this conduct, are therefore barred as a matter of law.[11]

Thus, the litigation privilege applies, and plaintiff's claims against defendant Hower based on protected activity that occurred before the Hawaii court are barred as a matter of law.

### III. PLAINTIFF'S REQUEST FOR LEAVE TO AMEND ITS PLEADINGS

Finally, plaintiff requests that, should the Court find that section 425.16 applies, it be permitted to "conduct discovery and to amend the complaint to supplement its allegations against [d]efendant Hower." (Opposition, 9.) California courts applying section 425.16 have held that a party cannot use the right to amend to avoid the consequences of the anti-SLAPP statute. *Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc.,* 122 Cal. App. 4th 1049, 1054 (2004) (plaintiff may not avoid liability for attorney fees and costs by voluntarily dismissing a cause of action to which an anti-SLAPP is directed or amending the pleading). However, the Ninth Circuit has held that consideration of an anti-SLAPP motion without permitting leave to amend liberally would collide with Rule 15 of the Federal Rules of Civil Procedure. *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). "Moreover, the purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint." *Id.* Because federal procedure governs this case, the Court grants plaintiff leave to amend its complaint to supplement its allegations as to defendant Hower.

Although the Court grants plaintiff leave to amend, the Court will not grant plaintiff additional time to conduct discovery into the stricken claims as plaintiff has not established sufficient cause to do so. *See TradeMotion, LLC v. MarketCliq, Inc.*, No. CV113236PSGVBKX,

---

[11] The Court takes no position on whether these issues can be raised in front of the judge in front of whom the conduct allegedly occurred.

13

2011 WL 13220413, at *8-9 (C.D. Cal. Oct. 25, 2011) (granting anti-SLAPP motion with leave to amend and denying request to develop discovery on the stricken claims).

## IV. CONCLUSION

Defendant Hower's Special Motion to Strike pursuant to California Code of Civil Procedure section 425.165 is **GRANTED IN PART**. All allegations related to defendant Hower's statements to the Hawaii court are **STRICKEN**. However, plaintiff's request for leave to amend its pleadings against defendant Hower is **GRANTED**. Plaintiff must file an amended complaint within 21 days. Defendants' response is due 21 days thereafter. Further, a Case Management Conference shall be set for **Monday, July 8, 2019** at **2:00 p.m.** in the Federal Building, 1301 Clay Street, Oakland in Courtroom 1.

Because he is the prevailing party, defendant Hower is entitled to an award of attorneys' fees and costs incurred in moving to strike the claims on which he prevailed. Cal. Civ. Proc. Code § 425.16(c); *Verizon Delaware, Inc. v. Covad Commc'ns Co.,* 377 F.3d 1081, 1091 (9th Cir. 2004) ("[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail."); *Semiconductor Equip. & Materials Int'l, Inc. v. The Peer Grp., Inc.*, No. 15-CV-00866-YGR, 2015 WL 5535806, at *1-2 (N.D. Cal. Sept. 18, 2015) ("Even if the pleading is amended . . . , the moving party may still be entitled to attorneys' fees and costs incurred in bringing the anti-SLAPP motion, per section 425.16(c)."); *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1027 (N.D. Cal. 2017) ("Defendants are 'entitled to recover attorney fees and costs incurred in moving to strike the claims on which ... [they] prevailed, but not fees and costs incurred in moving to strike the remaining claims.'") (quoting *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-CV-01842-JST, 2013 WL 6234628, at *10 (N.D. Cal. Dec. 2, 2013)). The parties are directed to meet and confer regarding attorneys' fees, as required under Local Rule 54-5(b)(1).

This terminates Docket No. 42.

**IT IS SO ORDERED**.

Date: May 20, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**